**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In re:

GOOD WORKS HOUSING LLC                   :      CHAPTER 11, SUBCHAPTER V

                                                      :

    Debtor.                                        :      BANKRUPTCY NO. 25-12224-djb


**<u>MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION</u>**

The Debtor, Good Works Housing LLC, by and through counsel, Regional Bankruptcy

Center of Southeastern PA, P.C., hereby submits the following Memorandum of Law in Support

of Confirmation of the Debtor's Second Amended Plan of Reorganization filed on January 12,

2026.


## I. <u>INTRODUCTION</u>

The Second Amended Plan (Doc. No. 180; the "Plan") was filed on January 12, 2026,

together with redlined versions comparing the Plan to the prior filed Plans, and attaching

Exhibits "A-1", "A-2",, "B" and "C" (Docs. 181-84, respectively).  Amended Exhibits "A-1",

"A-2", and "B" were filed on January 14, 2026 (Docs. 187, 188 and 189, respectively).  The Plan

together with the redlined version comparing the Plan to the Original Plan filed on September 2,

2025, Exhibits as amended, and ballots for voting was served on creditors on January 14, 2026.

The Debtor received ballots from some of the creditors and filed a Report of Plan Voting on

January 7, 2026.

The Plan classified claims and interests into eight classes, one class of priority claims,

three classes of secured/partially secured claims, one for each real property owned by the Debtor

addressed in the Plan, two classes of non-priority unsecured claims, and two classes of holders of

equity interests.  Clearly, the Plan impairs holders of Class 5 general unsecured claims and some

of the claims in Classes 2 and 3 that are classes of secured/partially secured claims against two of the Debtor's real properties.  Although the secured claims of the City of Philadelphia were included in the classes for each real property, the Debtor's position is that they should not have been deemed impaired until the City amended two of its claims, Claims Nos. 1 and 8, after the Plan was filed and served.  Taken as a whole, the Report of Plan Voting indicates that none of the Classes has voted to accept the Plan, but if the City's claims as originally filed are deemed unimpaired, then at least one class, Class 3 has voted to accept the Plan.  Classes 2 and 5 have voted to reject the Plan, although the Debtor remains in negotiations with the largest creditor in Class 2 that may result in that creditor's withdrawal of its Objection to Confirmation.  Because the requirements of Bankruptcy Code section 1129(a)(8) are not met, the Debtor seeks confirmation under Bankruptcy Code section 1191(b).  Pursuant to section 1191(b), this Court must confirm the Plan, provided all requirements of Bankruptcy Code section 1129(a) are met, other than section 1129(a)(8) and (10); and the plan does not discriminate unfairly and is fair and equitable to the rejecting classes that are impaired, within the meaning of section 1191(c).  The Debtor believes these requirements are met as is set forth below.

## II.  ARGUMENT

**A.    THE PLAN SATISFIES THE DISCLOSURE REQUIREMENTS OF §1190 OF THE BANKRUPTCY CODE.**

Pursuant to Section 1190 of the Bankruptcy Code, a plan filed under subchapter V:

(1) shall include—

 (A) a brief history of the business operations of the debtor;

 (B) a liquidation analysis; and

 (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization;

5

(2) shall provide for the submission of all or such portion of the future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan.

In accordance with §1190, the portion of the introductory section of the Plan entitled "Description and History of the Debtor's Business", Section A, contains a brief history of the Debtor's business operations and corporate structure, and describes key events which have transpired before the Chapter 11, Subchapter V case.  Section B of the introductory section of the Plan refers to Exhibit "B" of the Plan when discussing the liquidation analysis and the Debtor's, which together with Article 7 of the Plan discusses the Debtor's ability to make payments pursuant to the Plan.

**B.      THE APPLICABLE REQUIREMENTS OF §1129(a) OF THE BANKRUPTCY CODE ARE SATISFIED.**

**1.   Section 1129(a)(1):  The Plan Complies with the Applicable Provisions of the Bankruptcy Code.**

a.   The Plan Complies with Section 1122

The Plan designates 8 classes of claims (one class of priority claims, three classes of secured/partially secured claims, one for each real property owned by the Debtor addressed in the Plan, two classes of non-priority unsecured claims, and two classes of holders of equity interests).  Separate classification of claims and interests is based on differences in their relative priority under the Bankruptcy Code and secured/partially secured claims are further separated by the real property against which the claim is secured partially secured.  Each claim or interest in a given class is substantially similar to the others in such class.

b.   The Plan Complies with Section 1123(a)

(i)      Section 1123(a)(1):  Designation of Classes of Claims and Interests Other than Administrative Expense and Priority Tax Claims.

Administrative expense and priority tax claims have not been classified.  Rather, their

5

treatment is provided under §3.01 of the Plan.

      (ii)      Section 1123(a)(2): Specification of Unimpaired Classes.

The Plan, Article 4, specifies classes of claims and interests that are impaired or unimpaired, but does not identify any classes that are completely unimpaired.

      (iii)      Section 1123(a)(3): Specification of Treatment of Impaired Classes.

The Plan, Article 4, specifies the treatment of the impaired classes.

      (iv)      Section 1123(a)(4): Equal Treatment within Classes.

The Plan provides the same treatment for each claim or interest of a particular class, taking into account relative priority of security interests on each of the Debtor's real properties, except to the extent that the relevant holder of a security interest has agreed to less favorable treatment.

      (v)      Section 1123(a)(5): Adequate Means for Implementation of the Plan.

The Plan, Article 7, provides adequate means for its implementation through a sale of one real property and refinancing of two other real properties, with Plan payments to be derived from the remaining net rental income.

      (vi)      Section 1123(a)(6): Prohibition of Nonvoting Equity Securities.

As a limited liability company, the provision of section 1123(a)(6) prohibiting the issuance of nonvoting equity securities is inapplicable. The Debtor's Operating Agreement does not provide for any classes of membership or non-voting membership interests. The Operating Agreement provides that the Debtor's members shall each have voting power equal to their share of membership interest in the company. Therefore, there is an appropriate distribution of voting power among the members.

      (vii)      Section 1123(a)(7): Provisions Regarding Directors and Officers.

The Plan does not modify the manner in which the Debtor's managing members,

directors or officers are selected under the Operating Agreement, which are consistent with

consistent with the interests of stakeholders and public policy.

   c. <u>The Plan Complies with Section 1123(b)</u>.

    (i) <u>Section 1123(b)(1):  Impairment of Claims and Equity Interests</u>.

The Plan impairs or leaves unimpaired the classes of claims and of interests as set forth in

Article 4.

    (ii) <u>Section 1123(b)(2):  Executory Contracts and Unexpired Leases</u>.

The Plan deals with all executory contracts and unexpired leases, except those previously

rejected.  In particular, the Debtor's Plan assumes the residential leases of apartments at the

Debtor's real properties.  The only other unexpired lease as of the Petition date – a vehicle lease

financed by Mercedes Benz of Wilmington – matured on July 12, 2025, within the sixty (60) day

period following the Petition date.  The Plan provides for rejection of the lease, although there

remains a pending motion filed by Mercedes-Benz Financial Services USA LLC ("MBFS"),

seeking allowance of an administrative claim for post-petition lease payments allegedly due

during a period when the vehicle had been in an accident and was not in the Debtor's possession.

Debtor's position is that the MBFS motion should be denied.

    (iii)<u>Section 1123(b)(3):  Settlement or Adjustment of Claims
Belonging to the Estate; Preservation of Causes of Action</u>.

The Plan does not include any provisions related to settlement or adjustment of claims

or interests belonging to the Debtor.  There is one potential claim of which the Debtor is

aware concerning another entity of which the Debtor is a member, Understated, LLC, but the

Debtor does not anticipate addressing that matter under the Plan.

    (iv)<u>Section 1123(b)(4):  Sale of All or Substantially All of the
Property of the Estate</u>.

The Plan does not specifically provide for sale of all or substantially all of the property

of the estate, but the Plan does contemplate sale of one real property and transfer of title of another real property with the Debtor's retaining a minority interest. The Debtor intends to continue operating and to invest in additional real properties as its finances and potential new investment will allow.

> (v) <u>Section 1123(b)(5): Modification of the Rights of Holders of Secured Claims</u>.

As proposed, the Plan does not anticipate modifying the rights of holders of secured claims except by agreement.

> (vi) <u>Section 1123(b)(6): Other Appropriate Provisions</u>.

Although not specifically addressed in the Plan that was filed on January 12, 2026, the Debtor has not addressed claims against the Debtor's real property at 2715 N. Newkirk Street, Philadelphia, PA 19132 ("Newkirk"), because Newkirk had been sold at tax sale pre-petition on May 21, 2025, but the successful bidder at the tax sale did not complete the sale. As such the Debtor remains, or is again, title holder of Newkirk. Also, at the time of filing the Second Amended Plan of Reorganization, there were no claims filed against Newkirk other than Claim No. 5 filed by the Philadelphia Community Development Coalition, Inc., that has since been disallowed by the Court. After the Plan was filed, the City of Philadelphia and its Water Revenue Bureau (collectively the "City") amended the City's Claims Nos. 1 and 8 to include claims against Newkirk that are not addressed in the Plan. Two days after filing the second of the City's amended claims, the City cast ballots in three classes (Class 2, Class 3 and Class 4), rejecting the Plan. The Debtor does not intend to provide for the late-filed portions of the amended City claims related to Newkirk. At this juncture, the Debtor has decided to wait until the City takes any further action with respect to Newkirk to decide whether or not to attempt to save Newkirk from any new tax sale that may be scheduled by the City. In any

event, the late filed City claims against Newkirk should not be a factor in whether or not the Court should confirm the Plan.

Also, although not specifically addressed in the Plan that was filed on January 12, 2026, the Debtor has not provide any treatment for the real property titled jointly to the Debtor and Keaha Thomas, located at 2328 W. Harold Street, Philadelphia, PA 19132 ("Harold"), because the deed was supposed to be transferred to Keaha Thomas alone in October, 2020, but Keaha Thomas apparently gave incorrect information to the title agency that conducted the closing. At some point, the Debtor may seek to have a deed correction recorded to make clear that the Debtor has no ownership interest in Harold, but it will not be treated in the Plan.

## 2. Section 1129(a)(2): The Debtor Has Complied with the Applicable Provisions of the Bankruptcy Code

The Debtor solicited and tabulated votes on the Plan in good faith. The Debtor has filed a Report on Plan Voting, tabulating the results from the ballots received by the Debtor.

## 3. Section 1129(a)(3): The Plan Has Been Proposed in Good Faith

The Plan has been proposed in good faith, to achieve relief permitted by the Bankruptcy Code; namely, to provide for allowed claims, to assume unexpired leases with tenants of apartments at the Debtor's real properties and to reject an unexpired lease of a vehicle.

## 4. Section 1129(a)(4): Court Review of Professional Fees Payable under the Plan

The Plan does not provide for the payment of professional fees or expenses, except as allowed under Bankruptcy Code section 330.

## 5. Section 1129(a)(5): Identity and Compensation of Directors and Officers

The Plan identifies the Debtor's post-effective date directors and officers (managing member). The Plan does not provide any compensation for the Managing Member other than

5

through retention of his equity interest in the Debtor and future profits the Debtor may earn.

### 6. Section 1129(a)(6): Governmental Regulatory Commission Approval of Rate Changes Provided for in the Plan

This provision is inapplicable.

### 7. Section 1129(a)(7): Best Interests Test

In accordance with section 1190(1)(B), the Plan itself includes a liquidation analysis

(Exhibit "B") showing that the best interests test has been satisfied.

### 8. Section 1129(a)(9): Proper Treatment of Priority Claims

The Plan treats administrative expense, priority tax and priority non-tax claims in the

manner required by Bankruptcy Code section 1129(a)(9).

### 9. Section 1129(a)(11): Feasibility.

The Plan is feasible as described in Article 7 of the Plan, and as supported in the Debtor's

Monthly Operating Reports filed to date.

### 10. Section 1129(a)(12)-(15)

These provisions are inapplicable.

### 11. Section 1129(a)(16): Transfers of Property.

During the term of the Plan, no transfers of property will be undertaken by the Debtor

until and unless the Court has granted a motion filed by the Debtor approving the sale or other

transfer, other than the closing on the sale of the Debtor's property at 1333 W. Jerome Street,

Philadelphia, PA 19140, for which the Debtor had entered into an agreement of sale prior to the

Petition date

### C. THE FAIR AND EQUITABLE REQUIREMENT UNDER SECTION 1191(b) IS SATISFIED.

Section 1191(b) requires that a Plan not discriminate unfairly and be "fair and

5

equitable with respect to each class of claims that is impaired under, and has not accepted, the plan", in this case, Class 3. Section 1191(c) provides:

> The condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:
> (1) With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of this title.
> (2) As of the effective date of the plan—
> (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period … beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or
> (B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.
> (3)
> (A)(i) The debtor will be able to make all payments under the plan; or (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and
> (B) The plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.

It should be noted, unlike section 1129(b)(2)(B), the fair and equitable requirement in Subchapter V cases does not include a present value requirement; rather, all that is required is that unsecured creditors be paid 3 years' worth of "disposable income" as "projected" by the debtor, with section 1191(d)(2) defining "disposable income" as "income that is received by the debtor and that is not reasonably necessary to be expended … for the payment of expenditures necessary for the continuation, preservation or operation of the business of the debtor." The projected disposable income standard is met in this case in that the Plan proposes to pay unsecured creditors a total of $20,000.00, which is the estimated net revenue from rental income over a three year period. The expenses of operating and maintaining the

5

Debtor's real properties are "necessary" expenses under section 1191(d), and the projected

net revenue to fund the pool for unsecured creditors is sufficient for such funding, but there is

no projected surplus net rental income over the three year period.  The Plan is accordingly

fair and equitable with respect to Class 5.

## III. CONCLUSION

All confirmation requirements having been satisfied, the Court should enter an order

confirming the Plan.

Respectfully submitted,
REGIONAL BANKRUPTCY CENTER
OFSOUTHEASTERN PA, P.C., by:


Roger V. Ashodian
Attorney ID #42586
101 West Chester Pike, Suite 1A
Havertown, PA  19083
(610) 446-6800

Attorney for Debtor