UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **Good Works Housing LLC,** | : | Bky. No. 25-12224 (DJB) |
| | : | |
| **Debtor.** | : | |

**OPINION**

The right to reject burdensome contracts is potentially one of the most powerful rights provided to a debtor under the Bankruptcy Code. Section 365 of the Bankruptcy Code, which outlines that right, has been described as the most "psychedelic" of the Bankruptcy Code's provisions.[1] Its provisions allow debtors to occasionally rewrite history, keeping contracts in a twilight zone of enforceability and sending breaches of any burdensome contracts into the past to become prepetition claims. The present controversy stems from the Debtor's failure to promptly nip one such contract in the bud. While the Code provides debtors with many powerful tools, it does not help this Debtor avoid this administrative expense claim. For the reasons discussed below, the movant's request for an administrative expense claim for monthly obligations coming due after August 1, 2025 must be granted.

---

[1] See In re Ditech Holding Corp., 630 F. Supp. 3d 554, 558 (S.D.N.Y. 2022) (quoting Jay Lawrence Westbrook, A Functional Analysis of Executory Contracts, 74 Minn. L. Rev. 227, 228 (1989)).

1

**Procedural Background**

This matter comes before the Court pursuant to Mercedes-Benz Financial Services USA, LLC's Motion For Allowance And Payment Of Administrative Claim Pursuant To 11 U.S.C. 365(d)(5) And 11 U.S.C. 11 U.S.C. [*sic*] 503(b) For Debtor's Failure To Pay Under Vehicle Lease (the "Motion") [Dkt. No. 172].  Mercedes-Benz Financial Services USA, LLC ("MBFS") noticed the Motion for a hearing on January 27, 2026 and required objections no later than January 14, 2026 in accordance with our local rules. [Dkt. No. 173].  When no opposition was filed to the Motion, MBFS timely filed a certificate of no objection. [Dkt. No. 193].  However, on the Sunday before the scheduled hearing date, Good Works Housing LLC (the "Debtor") filed an untimely response.[2]  [Dkt. No. 203].

After several continuances, the matter was set for hearing on March 3, 2026 at which time MBFS and the Debtor presented the case on stipulated facts and made legal argument.  The matter is now ripe for a disposition.[3]

---

[2]    The Court has the authority to refuse to consider untimely filings.  See Brown v. City of Philadelphia, 541 F. Supp. 3d 605, 613–14 (E.D. Pa. 2021) (recognizing that courts have discretion to strike untimely filings that fail to comply with court order, local rules, or when counsel offers no sound justifications for untimeliness).  Because MBFS did not oppose the Debtor prosecuting its opposition, the Court nonetheless addressed the substance of the Debtor's objection to ensure a disposition of the Motion on the merits rather than on procedural grounds. See AstenJohnson, Inc. v. Columbia Cas. Co., 562 F.3d 213, 223 n.3 (3d Cir. 2009) ("In the absence of prejudice to the opposing party, we prefer resolution on the merits of an issue to disposition of it based on an unintended waiver by counsel.").  This decision should not be interpreted as condoning the Debtor's delinquency here nor lead counsel to expect any similar indulgence in the future.

[3]    The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 as incorporated by Federal Rule of Bankruptcy Procedure 9014.  The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference of the Eastern District of Pennsylvania as the matter arises in and/or is related to a case under the Bankruptcy Code.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408

**Factual Background**

The parties stipulated to the following relevant facts. The Debtor entered into a Motor Vehicle Lease Agreement (the "Lease") with MBFS dated July 12, 2021. The Debtor took possession of a Mecedes-Benz G63W4 SUV (the "Vehicle") and agreed to make monthly payments to MBFS on the 12th of each month. The Lease called for 48 monthly payments of $3,604.41 per month, the last of which was due on July 12, 2025 (called in the Lease, the "Lease End"). The Lease provided the Debtor with a purchase option which could be exercised prior to or on the Lease End. [Dkt. No. 227-2 at 3, § 21]. Otherwise, the Debtor was obligated to return the Vehicle to MBFS on July 12, 2025. [Id. at 3, § 22]. Failure to return the Vehicle at that time would place the Debtor in default and obligate the Debtor to pay the purchase price unless MBFS agreed to an extension in writing. Following that default, the Debtor would be obligated to continue making monthly payments of $3,604.41 each month until either (a) the total purchase price had been paid, (b) MBFS agreed to an extension, or (c) MBFS repossessed the vehicle. [Id. at 3, §22(a)(1)]. The Lease makes clear that any acceptance of such post-default payments does not give Debtor the right to keep the Vehicle.

At an unspecified date in 2024, the Vehicle was severely damaged and taken to a repair lot and remains there to this day. The Debtor filed a voluntary petition for relief under chapter 11, subchapter V of the Bankruptcy Code on June 2, 2025. [Dkt. No. 1]. The order for relief

---

& 1409. The matter presented by the Motion is a core matter pursuant to 28 U.S.C. § 157(b). To the extent that the matter is deemed non-core and/or the Court is without constitutional authority to render a final decision on the Motion, the following shall constitute the Court's report and recommendation in accordance with 28 U.S.C. § 157(c).

was entered that same day. See 11 U.S.C. § 301(b). The Debtor has not actively used the Vehicle at any point after it was damaged in 2024.

July 12, 2025 has come and gone. August 1, 2025—the 60th day after the order for relief—has come and gone. The Debtor has not exercised any of its Lease End options (i.e., payment of the purchase option or return of the Vehicle) nor has the Debtor assumed or rejected the Lease.

On January 12, 2026, the Debtor filed its Second Amended Plan Of Reorganization For Small Business Debtor Under Chapter 11, Subchapter V, Dated January 12, 2026 (the "Plan"). [Dkt. No. 180]. In the Plan, the Debtor proposed that the Lease would be "deemed rejected" as of the date of the filing of the Plan. [See Dkt. No. 180 Art. 6(b)]. To date, the Plan has not been confirmed. The Debtor has not made any postpetition payments to MBFS.

**Legal Standard**

Section 365(a) of the Bankruptcy Code empowers debtors to assume or reject executory contracts and unexpired leases after filing a bankruptcy petition. Assumption treats the contract or lease as if the bankruptcy had not occurred. In chapter 11, a timely rejection of a contract or lease, prior to any assumption, "constitutes a breach of such contract or lease . . . immediately before the date of the filing of the petition." 11 U.S.C. § 365(g). This is an incredibly strong power given over to debtors and, often, the counterparty to such contract or lease is left simply with an unsecured prepetition claim for damages stemming from the breach. See Mission Product Holdings, Inc. v. Tempnology, LLC, 587 U.S. 370, 374 (2019).

4

In chapter 11, debtors have until plan confirmation to affirmatively assume or reject most contracts, unless a party moves to shorten that period of time. See 11 U.S.C. § 365(d)(2). This timetable can be tremendously burdensome for non-debtor counterparties; they often are required to continue to perform their contractual obligations, and be at risk of non-payment for the services they provide, while the debtor decides how to treat the contract.

Recognizing this potential inequity, § 365 of the Bankruptcy Code provides certain advantages to counterparties depending on the nature of the contract. During the first 60 days after the order for relief, the counterparty to an unexpired lease of personal property gets no special treatment and bears the burden of proving up a garden-variety administrative claim (including proving the lease or the leased property benefited the estate).[4] See In re Wyoming Sand and Stone Co., 393 B.R. 359, 362 (Bankr. M.D. Pa. 2008). Section 365(d)(5) of the Bankruptcy Code provides some lessors a shortcut. Section 365(d)(5) of the Bankruptcy Code provides, in pertinent part: "The [Debtor] shall timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property. . . until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title[.]"[5] 11 U.S.C. § 365(d)(5). This

---

[4] All creditors have access to § 503 of the Bankruptcy Code and can seek administrative priority to the extent they are providing postpetition benefit to the estate. While MBFS initially sought additional compensation under this section for the 60-day period after the order for relief, MBFS waived that portion of its claim at the March 3rd hearing, admitting that it could not prove benefit to the estate. Therefore, this opinion only addresses the contested application of § 365(d)(5) to the postpetition period subsequent to the initial 60 days.

[5] While that section permits the Court to modify the Debtor's performance obligations otherwise "based on the equities of the case" the Debtor has not sought such relief here.

5

provision relieves those lessors of the otherwise tough road of proving entitlement to administrative priority after day 60.  See 3 Collier on Bankruptcy ¶ 365.04 (16th ed. 2026).

The Parties appear to acknowledge that the Lease is a "lease of personal property."  If the Lease is an "unexpired lease of personal property," the Debtor has all the rights—and obligations—under § 365 of the Bankruptcy Code.  If it is not unexpired, § 365 of the Bankruptcy Code simply does not apply.

**Discussion**

The present situation is unique for three (3) reasons: first, the Vehicle is undesirable; second, the final monthly payment under the Lease came due within the first 60 days of the Debtor's case; and third, the Debtor has inexplicably failed to reject the Lease earlier in the case.  Routinely, disputes like these involve a valuable piece of property where both parties want to gain or retain possession of the property which motivates the parties to act quickly; that is not the case here.  Additionally, the use of the term "Lease End" in the Lease has enabled the *Debtor* to argue that the lease expired without any action by the Debtor; typically debtors will affirmatively and promptly reject burdensome contracts.  Lastly, this whole dispute germinates from the inaction of the Debtor, leading it to make arguments which, as will be shown, are inconsistent with the statutory language and at odds with all parties' interests.

To begin, the Court must first assess whether the Lease is "unexpired."  "Unexpired" is not a defined term in the Bankruptcy Code.  Further, the parties have not identified—nor has the Court found—binding case law defining that term under the Bankruptcy Code or applicable non-

bankruptcy law.  Therefore, the Court is left to define the term in two ways: by its ordinary meaning and by its use in the context within the statute.  Both lead to the same meaning here.

Canons of construction are judicial presumptions and rules used to interpret legal texts, such as statutes and contracts, by focusing on language, structure, and intent.  See Env't Prot. Agency v. Calumet Shreveport Ref., L.L.C., 605 U.S. 627, 638 (2025) (stating that terms undefined in a statute are presumptively given their "ordinary meaning").  Under the Ordinary-Meaning Canon, "words are to be understood in their ordinary, everyday meanings—unless the context of the statute indicates that they bear a technical sense."  Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts, 69-70 (2012).  Here, the Court looks at the ordinary definition of "unexpired."  "Unexpired" is an adjective which means "not expired," which is not terribly helpful.  Unexpired, Merriam-Webster's Collegiate Dictionary, https://unabridged.merriam-webster.com/collegiate/unexpired (last visited Mar. 13, 2026).  However, a common synonym of expire is "conclude."  Expire, Merriam-Webster's Collegiate Thesaurus, https://unabridged.merriam-webster.com/thesaurus/expire (last visited Mar. 13, 2026).  "Concluded" is defined as "completed."  Conclude, Merriam-Webster's Collegiate Dictionary, https://unabridged.merriam-webster.com/collegiate/conclude (last visited Mar. 13, 2026).  "Complete" means "to end after satisfying all demands or requirements."  Complete, Merriam-Webster's Collegiate Dictionary, https://unabridged.merriam-webster.com/collegiate/complete (last visited Mar. 13, 2026).  Thus, the ordinary meaning of "unexpired" as used in § 365 of the Bankruptcy Code describes a lease of personal property whose demands and requirements are not yet satisfied, concluded, or completed.

Even if one were to suggest that the use of the term "unexpired lease" in § 365 of the Bankruptcy Code has a technical meaning, the use of that term in parallel with the term "executory contract" also confirms the operative definition. "Executory contracts" and "unexpired leases" are not interchangeable terms. See In re Sturgis Iron & Metal Co., Inc., 420 B.R. 716, 719 (Bankr. W.D. Mich. 2009). But Congress used these two phrases side by side and clearly intended similar treatment of these contracts in many circumstances. The *noscitur a sociis* canon suggests that associated words or phrases "bear on one another's meaning." Scalia & Garner, supra, at 195-98. Here, prior explanations of the term "executory contract" as the associated form of contracts governed by § 365 of the Bankruptcy Code is helpful. The Bankruptcy Code also does not explicitly define "executory contract." See In re Weinstein Co. Holdings LLC, 997 F.3d 497, 504 (3d Cir. 2021). The Third Circuit, however, defines an "executory contract" as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." In re Exide Techs., 607 F.3d 957, 962 (3d Cir. 2010). A useful throughline between them is that both "executory contracts" and "unexpired leases" are those agreements where extant obligations exist on the parties such that it could make sense for the debtor to desire to be bound, and bind its counterparty, to the contract postpetition. For instance, nonresidential real property leases that have been terminated under applicable nonbankruptcy law prepetition are not unexpired, because the debtor has no property right left to enforce against a lessor. See 11 U.S.C. § 365(c)(3) (prohibiting assumption of a nonresidential real property lease that terminated prior to the order for relief); In re Golden Books Fam. Ent., Inc., 269 B.R. 300, 310 (Bankr. D. Del. 2001) ("contract terminated pre-petition cannot be assumed or assigned because 'there is nothing left . .

. to assume or assign'") (quoting 3 Collier on Bankruptcy ¶ 365.02[2] (15th ed.1997)).[6]  Thus, even the technical meaning of "unexpired" as used in § 365 of the Bankruptcy Code to describe a lease of personal property—consistent with the term "executory contract"—is a lease where the obligations of the parties are not concluded or completed.  Therefore, whether the Court uses the "ordinary meaning" or the "technical meaning," the term unexpired must mean a lease which is not concluded.

With these principles in mind, the Court turns to the Lease here.  The Court must look to the Lease itself and the language used by the parties to determine whether or not it remains unexpired for purposes of § 365 of the Bankruptcy Code.  The Debtor argues that the Lease is not "unexpired" because the "Lease End" occurred.  Once the Lease End occurred, the Debtor argues that the Lease "concluded."  MBFS counters that the Lease End was simply the date the last payment was due, but that the Lease did not expire on that date.  Rather, MBFS points out that the Lease contains several provisions that continue to obligate and bind the parties well after the Lease End.

At first blush, the Debtor's argument that the Lease End means the Lease "expired" seems logical.  After all, among Merriam-Webster's definitions, "expire" means "to come to an end."  Expire, Merriam-Webster's Collegiate Dictionary, https://unabridged.merriam-

---

[6]     Even equating "unexpired" with "not terminated" is an area of some dispute.  For example, there are cases that hold that a lease of residential real property which was terminated under applicable non-bankruptcy law prepetition may nonetheless still be "unexpired" for purposes of § 365 of the Bankruptcy Code.  See, e.g., In re DiCamillo, 206 B.R. 64, 68 (Bankr. D.N.J. 1997); In re Morgan, 181 B.R. 579, 585 (Bankr. N.D. Ala. 1994).  These cases note a debtor's possessory rights to the leasehold under state law affect the definition of "unexpired."

webster.com/collegiate/expire (last visited Mar. 13, 2026).  It could make sense to conclude, therefore, that when the parties contracted for a "Lease End" date, they intended the Lease to expire on that date.  However, that was clearly not the intent of these parties.

Rather, "Lease End" is a term purely cabined to its usage in the Lease itself.  Under the Lease, the term "Lease End" was used to identify the date of the last regularly scheduled payment (i.e., July 12, 2025).  But Lease End did not mean "Lease Concluded."  In fact, the parties contracted for an entire set of obligations which exist only upon the "Lease End."  An entire section of the Lease outlines the right of the parties at the "End of Lease."  [Dkt. No. 227-2, p.3].  Section 21 of the Lease entitled the Debtor to exercise a purchase option for the Vehicle "at the end of the scheduled Lease Term."  [Id. § 21].  That exercise, if taken, required MBFS to deliver title to the Vehicle.  Further, § 22 of the Lease, titled "Return of Vehicle," makes clear that the Debtor was required to return the Vehicle to MBFS at Lease End unless the Lease was terminated early or the Debtor elected to purchase the Vehicle.  [Id. § 22].  Under § 22 of the Lease, the failure to return the Vehicle at Lease End placed the Debtor in default and obligated the Debtor to either pay the full purchase price of the Vehicle or seek a written extension of the Lease with MBFS.  [Id.]  During any period after Lease End that the Debtor remained in possession of the Vehicle, the Debtor was obligated to continue making monthly payments until either the full purchase price was paid, an extension was executed, or MBFS took back possession of the Vehicle.  [Id.]

Here, the Lease is a contract that created a series of material, mutual obligations on the parties.  At the inception, MBFS agreed to deliver possession of the Vehicle to the Debtor.  For

the next 48 months, the Debtor agreed to pay a monthly fee for the ongoing possession and use of the Vehicle. Then at Lease End, the Debtor had a choice. The Debtor could either pay a purchase price—which would have required MBFS to convey title to the Vehicle to the Debtor—or the Debtor could surrender the Vehicle to MBFS. The Debtor did neither. The Lease was not completed or concluded at Lease End. Rather, at Lease End, due to the Debtor's inaction, the Debtor was in default, and the Debtor's subsequent obligations were determined by § 22 of the Lease. By failing to purchase the Vehicle or return it, the Debtor had ongoing obligations under the Lease: an ongoing obligation to make monthly payments until purchase or surrender of the Vehicle. Admittedly, if at any time the Debtor had returned the Vehicle or tendered the full purchase price, the Lease would have concluded. Prior to such action, the Lease remains unexpired and capable of assumption or rejection by the Debtor.

Finally, this determination—that the Lease is "unexpired"—is also consistent with the relief the Debtor seeks in connection with its Plan. Here, the Debtor purports to treat the Lease as "unexpired" under § 365(b)(2) of the Bankruptcy Code, and subject to rejection, through its Plan. [See Dkt. No. 180 Art. 6(b)]. If the Lease was truly not "unexpired" (i.e., not completed or concluded) as the Debtor suggests in opposition to the Motion, the Debtor would not need to seek rejection through its plan. See, e.g., In re Golden Books, 269 B.R. at 310 (noting that terminated contracts cannot be assumed). The Court's conclusion here is thus buttressed by the Debtor's own positions taken in this case. See New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (recognizing that courts have equitable power to prevent parties from taking a position to succeed in one phase of a legal proceeding and then taking a contradictory position to prevail in another phase).

11

Having concluded that the Lease is "unexpired," the next question is whether the Debtor was required to continue to perform its obligations under that Lease after the 60th day after its Order for Relief.  The Bankruptcy Code plainly applies and directs performance: "The [Debtor] shall timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property. . . until such lease is assumed or rejected[.]"  11 U.S.C. § 365(d)(5).  The statute imposes an unequivocal performance obligation on the Debtor.  Because the Lease remained extant and its terms continued to govern the relationship between the parties, the Debtor was obligated to make continuing monthly payments on the twelfth of each month prior to purchase or surrender of the Vehicle.  [Dkt. No. 227-2, § 22].  Those monthly payments are obligations arising under an unexpired lease of personal property and § 365(d)(5) of the Bankruptcy Code mandates performance.

This result may appear strange or unjust.  Why should the Debtor bear this ongoing expense for a Vehicle it no longer wants or uses?  Should any party doubt this result based on the *seeming* inequitable result to the Debtor, it must be remembered that this statutory scheme reaches sensible results in nearly all cases.

Consider a case where, rather than an unused vehicle like here, a debtor remains in possession of a valuable and functional vehicle.  It would be preposterous for a debtor to argue that simply because a final monthly payment date had come and gone, that the lease was "expired" while simultaneously refusing to affirmatively assume or reject the contract.  In such a

case, the debtor would be empowered to retain and use the vehicle, ignore its obligations to return/redeem the vehicle or make monthly payments, and argue that the lessor has no contract rights. Conversely, if a debtor properly elected to tender the purchase option, the Court would not permit the lessor to point to the final monthly payment date as a date of expiration and argue that the debtor lost its ability to enforce the contract and acquire the leased equipment. What is good for the goose is good for the gander, and here, neither geese nor ganders benefit from the interpretation the Debtor puts forth today.

That is because the Bankruptcy Code provides every escape hatch needed to avoid the situation in which the parties find themselves. This Lease is clearly burdensome to the Debtor. The Debtor could have, and perhaps should have, affirmatively rejected the Lease at the earliest moment possible in this bankruptcy proceeding. The Debtor did not. Likewise, the Debtor could have petitioned the Court for a modification of its postpetition performance obligations, pointing out that the Vehicle was inoperable or valueless, or that compliance caused some hardship. See In re Double G Trucking of the Arlatex, Inc., 442 B.R. 684, 690 (Bankr. W.D. Ark. 2010). The Debtor did not. Even if the Debtor had been slow on the uptake, §§ 108 & 365(d)(5) of the Bankruptcy Code give debtors a grace period to evaluate the benefit of the lease for 60 days without fearing disproportionate administrative liabilities. The Debtor did not act within that time. The fact that Debtor here "did not avail [itself] of [an] easier path [is] no reason to absolve them in these circumstances." In re Federal-Mogul Global Inc., 222 Fed.Appx. 196, 201 (3d Cir. 2007).

Case 25-12224-djb    Doc 244    Filed 03/13/26    Entered 03/13/26 15:22:07    Desc Main
Document    Page 14 of 14

Since the Lease is unexpired, § 365 of the Bankruptcy Code applies. The Debtor is entitled to assume or reject the Lease within the time that the Bankruptcy Code permits. However, while the Debtor keeps the Lease "in limbo" the Debtor is obligated to comply with the obligations imposed by § 365(d)(5) of the Bankruptcy Code which arose after August 1, 2025. Here, the Debtor did not comply. The Lease required the Debtor to continue to make a monthly payment of $3,604.41 on the 12th of each month after August 1, 2025 until the Debtor purchased or surrendered the Vehicle. The Debtor failed to elect either alternative and must therefore bear liability for the missed payments.

**Conclusion**

For the foregoing reasons, the Court concludes that MBFS is entitled to an administrative expense claim for $18,022.05, representing the five (5) payments that came due after August 1, 2025 (i.e., August 12, 2025 to December 12, 2025) as sought in the Motion. Further, MBFS is entitled to an on-going monthly administrative expense claim in the amount of $3,604.41 per month after December 12, 2025 (for each month not paid) until the earlier of either satisfaction of the Debtor's Lease End obligations or the effective date of the assumption or rejection of the Lease.

An appropriate order shall issue.

**Date: March 13, 2026**

_____
**DEREK J. BAKER**
**U.S. BANKRUPTCY JUDGE**

14