IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:

GOOD WORKS HOUSING LLC       :    CHAPTER 11, SUBCHAPTER V

                                  :

    Debtor.                    :    BANKRUPTCY NO. 25-12224-djb


## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION

The Debtor, Good Works Housing LLC, by and through counsel, Regional Bankruptcy Center of Southeastern PA, P.C., hereby submits the following Memorandum of Law in Support of Confirmation of the Debtor's Fourth Amended Plan of Reorganization dated April 16, 2026.


## I. INTRODUCTION

The Fourth Amended Plan (Doc. No. 272; the "Plan"), dated April 16, 2026, together with a redlined version comparing the Plan to the prior filed Plan, and Exhibits "A-1", "A-2",, "B", "C" and "D".  The Plan together with the redlined version comparing the Plan to the Third Amended Plan of Reorganization, the Amended Order Setting Hearing on Confirmation of Plan and Related Deadlines, with Notice Thereof" (Doc. No. 262), and ballots for voting was served on creditors on April 17, 2026.  The Debtor filed a Report of Plan Voting on May 7, 2026, indicating that no ballots had been received by the May 5, 2026 deadline, but later was notified and discovered that ballots had been submitted and received from one creditor, and filed an Amended Report of Plan Voting on May 11, 2026.

The Plan classified claims and interests into seven classes, one class of priority claims, two classes of secured/partially secured claims, one for each type of treatment (sale or retention with refinancing) of the applicable real properties owned by the Debtor addressed in the Plan, one class of non-priority unsecured claims, two classes of holders of equity interests, and one

class of other claims.  Clearly, the Plan impairs holders of Class 4 general unsecured claims and some of the claims in Class 2 that are classes of secured/partially secured claims against two of the Debtor's real properties that will be sold (but by agreement).  The Debtor's dispute with the City of Philadelphia concerning its claims has been resolved. The Amended Report of Plan Voting indicates that none of the Classes has voted to accept the Plan, but some creditors for which the treatment of their claims has either remained the same as that in the Third Amended Plan of Reorganization previously voted to accept that Plan, and the Debtor submits should be deemed to have accepted the Fourth Amended Plan of Reorganization to the extent the Plan treatment has remained unchanged from that in the previously accepted Plan.  Also, the lack of voting to accept or reject the Plan by other creditors with which the Debtor has reached agreement that has been evidenced by other Court filings should likewise be deemed acceptance of the Plan (or at least an indication that the creditors find the Plan to be fair and equitable). Because the requirements of Bankruptcy Code section 1129(a)(8) are not met, the Debtor seeks confirmation under Bankruptcy Code section 1191(b).  Pursuant to section 1191(b), this Court must confirm the Plan, provided all requirements of Bankruptcy Code section 1129(a) are met, other than section 1129(a)(8) and (10); and the plan does not discriminate unfairly and is fair and equitable to the rejecting classes that are impaired, within the meaning of section 1191(c).  The Debtor believes these requirements are met as is set forth below.

## II.  ARGUMENT

### A.  THE PLAN SATISFIES THE DISCLOSURE REQUIREMENTS OF §1190 OF THE BANKRUPTCY CODE.

Pursuant to Section 1190 of the Bankruptcy Code, a plan filed under subchapter V:

(1) shall include—

(A) a brief history of the business operations of the debtor;

(B) a liquidation analysis; and

(C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization;

(2) shall provide for the submission of all or such portion of the future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan.

In accordance with §1190, the portion of the introductory section of the Plan entitled "Description and History of the Debtor's Business", Section A, contains a brief history of the Debtor's business operations and corporate structure, and describes key events which have transpired before the Chapter 11, Subchapter V case. Section B of the introductory section of the Plan refers to Exhibit "B" of the Plan when discussing the liquidation analysis and the Debtor's, which together with Article 7 of the Plan discusses the Debtor's ability to make payments pursuant to the Plan.

**B. THE APPLICABLE REQUIREMENTS OF §1129(a) OF THE BANKRUPTCY CODE ARE SATISFIED.**

**1. Section 1129(a)(1): The Plan Complies with the Applicable Provisions of the Bankruptcy Code.**

a. The Plan Complies with Section 1122

The Plan designates seven classes of claims (one class of priority claims, two classes of secured/partially secured claims, one for each type of treatment (sale or retention with refinancing) of the applicable real properties owned by the Debtor addressed in the Plan, one class of non-priority unsecured claims, two classes of holders of equity interests, and one class of other claims). Separate classification of claims and interests is based on differences in their relative priority under the Bankruptcy Code and secured/partially secured claims are further separated by the treatment of the debts secured or partially secured against the particular real

5

properties owned by the Debtor.  Each claim or interest in a given class is substantially similar to the others in such class.

      b.   The Plan Complies with Section 1123(a)

      (i)   Section 1123(a)(1):  Designation of Classes of Claims and Interests Other than Administrative Expense and Priority Tax Claims.

Administrative expense and priority tax claims have not been classified.  Rather, their treatment is provided under §3.01 of the Plan.

      (ii)   Section 1123(a)(2):  Specification of Unimpaired Classes.

The Plan, Article 4, specifies classes of claims and interests that are impaired or unimpaired, but does not identify any classes that are completely unimpaired.

      (iii)   Section 1123(a)(3):  Specification of Treatment of Impaired Classes.

The Plan, Article 4, specifies the treatment of the impaired classes.

      (iv)   Section 1123(a)(4):  Equal Treatment within Classes.

The Plan provides the same treatment for each claim or interest of a particular class, taking into account relative priority of security interests on each of the Debtor's real properties, except to the extent that the relevant holder of a security interest has agreed to less favorable treatment.

      (v)   Section 1123(a)(5):  Adequate Means for Implementation of the Plan.

The Plan, Article 7, provides adequate means for its implementation through a sale or transfer of two real properties, refinancing of one other real property, and virtual abandonment of a fourth real property that had been sold at tax sale, but for which the tax sale was cancelled when the successful bidder did not complete the purchase, with Plan payments to be derived from the remaining net rental income and that from the Debtor's interests in two other limited liability companies.

5

(vi)     Section 1123(a)(6):  Prohibition of Nonvoting Equity Securities.

As a limited liability company, the provision of section 1123(a)(6) prohibiting the issuance of nonvoting equity securities is inapplicable.  The Debtor's Operating Agreement does not provide for any classes of membership or non-voting membership interests.  The Operating Agreement provides that the Debtor's members shall each have voting power equal to their share of membership interest in the company.  Therefore, there is an appropriate distribution of voting power among the members.

(vii)     Section 1123(a)(7):  Provisions Regarding Directors and Officers.

The Plan does not modify the manner in which the Debtor's managing members, directors or officers are selected under the Operating Agreement, which are consistent with consistent with the interests of stakeholders and public policy.

c.    The Plan Complies with Section 1123(b).

(i)   Section 1123(b)(1):  Impairment of Claims and Equity Interests.

The Plan impairs or leaves unimpaired the classes of claims and of interests as set forth in Article 4.

(ii) Section 1123(b)(2):  Executory Contracts and Unexpired Leases.

The Plan deals with all executory contracts and unexpired leases, except those previously rejected.  In particular, the Debtor's Plan assumes the residential leases of apartments at the Debtor's real properties.  The only other unexpired lease as of the Petition date – a vehicle lease financed by Mercedes Benz of Wilmington – matured on July 12, 2025, within the sixty (60) day period following the Petition date.  The Plan provides for rejection of the lease, although the Court has ruled on a motion filed by Mercedes-Benz Financial Services USA LLC ("MBFS"), allowing an administrative claim for post-petition lease payments claimed to be due during a period when the vehicle had been in an accident and was not in the Debtor's possession.

     (iii) <u>Section 1123(b)(3):  Settlement or Adjustment of Claims
Belonging to the Estate; Preservation of Causes of Action</u>.

The Plan does not include any provisions related to settlement or adjustment of claims or interests belonging to the Debtor.  There is one potential claim of which the Debtor is aware concerning another entity of which the Debtor is a member, Understated LLC, but the Debtor does not anticipate addressing that matter directly under the Plan (the Debtor may seek a Court determination regarding the Debtor's interest in Understated LLC if the outstanding matter is not resolved in state court.

     (iv) <u>Section 1123(b)(4):  Sale of All or Substantially All of the
Property of the Estate</u>.

The Plan does not specifically provide for sale of all or substantially all of the property of the estate, but the Plan does contemplate sale of one real property and transfer of title of another real property with the Debtor's retaining a minority interest.  The Debtor intends to continue operating and to invest in additional real properties as its finances and potential new investment will allow.

     (v) <u>Section 1123(b)(5):  Modification of the Rights of Holders of
Secured Claims</u>.

As proposed, the Plan does not anticipate modifying the rights of holders of secured claims except by agreement.

     (vi) <u>Section 1123(b)(6):  Other Appropriate Provisions</u>.

Although not specifically addressed in the Plan that was filed on April 16, 2026, the Debtor has not provided for any payment of claims against the Debtor's real property at 2715 N. Newkirk Street, Philadelphia, PA  19132 ("Newkirk"), because Newkirk had been sold at tax sale pre-petition on May 21, 2025, but the successful bidder at the tax sale did not complete the sale.  As such the Debtor remains, or is again, title holder of Newkirk.  Also, at

the time of filing the Fourth Amended Plan of Reorganization, there were no claims filed against Newkirk other than Claim No. 5 filed by the Philadelphia Community Development Coalition, Inc., that has since been disallowed by the Court. After the Plan was filed, the City of Philadelphia and its Water Revenue Bureau (collectively the "City") amended the City's Claims Nos. 1 and 8 to include claims against Newkirk that are not addressed in the Plan. The Debtor negotiated with the City of Philadelphia and reached agreement on different language included in the Plan that the City of Philadelphia found acceptable. The Debtor does not intend to provide for the amended City claims related to Newkirk. The City of Philadelphia is free to take whatever action it deems appropriate with respect to Newkirk. At this juncture, the Debtor has decided to wait until the City takes any further action with respect to Newkirk to decide whether or not to attempt to save Newkirk from any new tax sale that may be scheduled by the City. In any event, the City of Philadelphia's claims against Newkirk should not be a factor in whether or not the Court should confirm the Plan.

Also, although not specifically addressed in the Plan that was filed on April 16, 2026, the Debtor has not provide any treatment for the real property titled jointly to the Debtor and Keaha Thomas, located at 2328 W. Harold Street, Philadelphia, PA 19132 ("Harold"), because the deed was supposed to be transferred to Keaha Thomas alone in October, 2020, but Keaha Thomas apparently gave incorrect information to the title agency that conducted the closing. At some point, the Debtor may seek to have a deed correction recorded to make clear that the Debtor has no ownership interest in Harold, but it will not be treated in the Plan.

### 2. Section 1129(a)(2): The Debtor Has Complied with the Applicable Provisions of the Bankruptcy Code

The Debtor solicited and tabulated votes on the Plan in good faith. The Debtor has filed a Report on Plan Voting, tabulating the results from the ballots received by the Debtor.

### 3. Section 1129(a)(3): The Plan Has Been Proposed in Good Faith

The Plan has been proposed in good faith, to achieve relief permitted by the Bankruptcy Code; namely, to provide for allowed claims, to assume unexpired leases with tenants of apartments at the Debtor's real properties and to reject an unexpired lease of a vehicle.

### 4. Section 1129(a)(4): Court Review of Professional Fees Payable under the Plan

The Plan does not provide for the payment of professional fees or expenses, except as allowed under Bankruptcy Code section 330.

### 5. Section 1129(a)(5): Identity and Compensation of Directors and Officers

The Plan identifies the Debtor's post-effective date directors and officers (managing member). The Plan does not provide any compensation for the Managing Member other than through retention of his equity interest in the Debtor and future profits the Debtor may earn.

### 6. Section 1129(a)(6): Governmental Regulatory Commission Approval of Rate Changes Provided for in the Plan

This provision is inapplicable.

### 7. Section 1129(a)(7): Best Interests Test

In accordance with section 1190(1)(B), the Plan itself includes a liquidation analysis (Exhibit "B") showing that the best interests test has been satisfied.

### 8. Section 1129(a)(9): Proper Treatment of Priority Claims

The Plan treats administrative expense, priority tax and priority non-tax claims in the manner required by Bankruptcy Code section 1129(a)(9).

### 9. Section 1129(a)(11): Feasibility.

The Plan is feasible as described in Article 7 of the Plan, and as supported in the Debtor's Monthly Operating Reports filed to date.

**10. Section 1129(a)(12)-(15)**

These provisions are inapplicable.

**11. Section 1129(a)(16):  Transfers of Property.**

During the term of the Plan, no transfers of property will be undertaken by the Debtor until and unless the Court has granted a motion filed by the Debtor approving the sale or other transfer, other than the closing on the sale of the Debtor's property at 1333 W. Jerome Street, Philadelphia, PA  19140, for which the Debtor had entered into an agreement of sale prior to the Petition date

**C.    THE FAIR AND EQUITABLE REQUIREMENT UNDER SECTION 1191(b) IS SATISFIED.**

Section 1191(b) requires that a Plan not discriminate unfairly and be "fair and equitable with respect to each class of claims that is impaired under, and has not accepted, the plan", in this case, Class 3.  Section 1191(c) provides:

> The condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:
> (1) With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of this title.
> (2) As of the effective date of the plan—
>     (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period … beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or
>     (B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.
> (3)
>     (A)(i) The debtor will be able to make all payments under the plan; or (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and
>     (B) The plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the

5

holders of claims or interests in the event that the payments are not made.

It should be noted, unlike section 1129(b)(2)(B), the fair and equitable requirement in Subchapter V cases does not include a present value requirement; rather, all that is required is that unsecured creditors be paid 3 years' worth of "disposable income" as "projected" by the debtor, with section 1191(d)(2) defining "disposable income" as "income that is received by the debtor and that is not reasonably necessary to be expended … for the payment of expenditures necessary for the continuation, preservation or operation of the business of the debtor." The projected disposable income standard is met in this case in that the Plan proposes to pay unsecured creditors a total of $20,000.00, which is the estimated net revenue from rental income over a three year period. The expenses of operating and maintaining the Debtor's real properties are "necessary" expenses under section 1191(d), and the projected net revenue to fund the pool for unsecured creditors is sufficient for such funding, but there is no projected surplus net rental income over the three year period. The Plan is accordingly fair and equitable with respect to Class 5.

Finally, MBFS objects to the Plan on the basis of 11 U.S.C. §1129(a)(9)(A), but the objection should not be sustained, because full payment of administrative claims is not required in Subchapter V cases as long as the Debtor can establish that the Plan is fair and equitable. *See* 11 U.S.C. §1129(e).

5

## III.  CONCLUSION

All confirmation requirements having been satisfied, the Court should enter an order

confirming the Plan.

Respectfully submitted,
REGIONAL BANKRUPTCY CENTER
OFSOUTHEASTERN PA, P.C., by:

Roger V. Ashodian
Attorney ID #42586
101 West Chester Pike, Suite 1A
Havertown, PA  19083
(610) 446-6800

Attorney for Debtor